UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MONTE MILLER,<br><br>        Plaintiff,<br><br>        v.<br><br>CAROLYN W. COLVIN, *in her official capacity as Acting Commissioner, Social Security Administration*<br><br>        Defendant. | Civil Action No. 15-cv-00382 (TSC)(AK) |

**MEMORANDUM OPINION**

Plaintiff Monte Miller seeks reversal of an October 26, 2012 decision by an Administrative Law Judge ("ALJ") denying him Supplemental Security Income benefits ("SSI") and disability insurance ("DI"). This action was assigned to Magistrate Judge Kay for full case management, and after reviewing Plaintiff's motion for judgment of reversal, Defendant's motion for judgment of affirmance, and Plaintiff's reply, Judge Kay issued a Report and Recommendation ("Report"), recommending that the court deny Plaintiff's motion and grant Defendant's motion. Plaintiff timely objected to the Report. Upon consideration of the record in this case, the Report, and the objections and responses thereto, the court hereby adopts the Magistrate Judge's Report, and further accepts Judge Kay's Recommendation.

**I.   BACKGROUND**

Plaintiff first applied for SSI and DI on May 26, 2010, alleging that he became disabled beginning on May 7, 2010. (Administrative Record ("AR") 136, 144). Both of these applications were denied. (*Id*. 53, 57). Plaintiff, acting *pro se*, then requested reconsideration

1

without submitting any additional evidence, and was denied upon reconsideration on April 8, 2011. (*Id*. 60, 63).  Plaintiff then obtained counsel and requested a hearing before an ALJ, which took place on October 22, 2012. (*Id.* 22-40 [Hearing Transcript]).  The ALJ issued a decision on October 26, 2012, finding Plaintiff not disabled within the meaning of the Social Security Act. (*Id*. 11-18).  Plaintiff appealed to the Appeals Council, which denied his request for review of the unfavorable decision on January 9, 2014. (*Id*. 1).  Plaintiff filed his complaint in District Court on March 16, 2015.

Plaintiff argued that the ALJ erred by not assigning enough weight to evidence from his treating physician, Dr. Kamara, regarding his limitations.  (Mot. for Judgment of Reversal at 3, ECF No. 11; AR 15).  The ALJ discounted Dr. Kamara's August 17, 2012 opinion about Plaintiff's condition, on the grounds that Dr. Kamara had not evaluated Plaintiff in person since June 2010.  But Plaintiff contended that the ALJ's understanding was incorrect because Dr. Kamara had been "following [Plaintiff] for almost two years."  (Mot. for Judgment of Reversal at 3-4).  Plaintiff also argued that the ALJ erred by misinterpreting Plaintiff's "aspirational" statement about how much weight he could lift as a "definitive assertion."  (*Id*. at 6).

Judge Kay examined Plaintiff's "medical records spanning from August 2008 to August 2012," along with his testimony from the October 22 hearing, and found that the record contains substantial evidence to support the ALJ's finding, and that the ALJ did not err in his consideration of the treating physician's opinion nor in finding Plaintiff's testimony about his limitations "not entirely credible." (Report at 23, ECF No. 15).  Judge Kay explained that the record contained no medical records from Dr. Kamara later than June 2010, supporting the ALJ's finding that Dr. Kamara had not examined Plaintiff since that date. (Report at 21 n.15).  Judge Kay noted that Plaintiff did not address another statement in which he indicated that he could lift

up to 15 or 20 pounds, and did not address his conflicting testimony about the hours that he could sit and stand. (*Id*. at 22). Judge Kay recommended denying Plaintiff's motion for judgment of reversal. (*Id.* at 23).

Plaintiff now challenges the Report. He argues that Judge Kay erred by concluding that the ALJ's assessment of Dr. Kamara's report was appropriate because of the lack of record evidence that the doctor had examined Plaintiff recently, because the ALJ actually gave Dr. Kamara's opinion no weight because she did not submit contemporaneous treatment notes. (Pl. Objection at 5-6, ECF No. 16). Plaintiff submits that the absence of contemporaneous treatment notes is not a valid reason for discounting a treating physician's opinion. (*Id*.) Plaintiff also reiterates his challenge to the ALJ's finding that Plaintiff could lift at least ten pounds, contrary to Plaintiff's testimony at the hearing. Plaintiff asks this court to "correct" Judge Kay's finding that the ALJ's conclusion, contrary to Dr. Kamara's opinion, was supported by substantial evidence. (*Id*. at 9-10).

## II.     LEGAL STANDARD

When a Magistrate Judge issues a recommendation for a dispositive motion, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The judge may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

In order to receive disability benefits, a claimant must prove that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A).

3

The disability must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id*. § 423 (d)(2)(A). "The claimant must support his claim of impairment with '[o]bjective medical evidence' that is 'established by medically acceptable clinical or laboratory diagnostic techniques.'" *Espinosa v. Colvin*, 953 F. Supp. 2d 25, 31 (D.D.C. 2013) (quoting 42 U.S.C. § 423(d)(5)(A)).

The Social Security Administration's evaluation of a disability claim follows a five step inquiry: (1) Is the claimant engaged in substantial gainful work? (2) Does the claimant have a severe impairment? (3) Does the impairment equate to a listed disability in 20 C.F.R., Part 404, Subpart P, Appendix 1? (4) Is the claimant able to return to their relevant past work, despite suffering the impairment?  (5) Can the claimant perform any other work that exists in significant numbers in the national economy?  *Brown v. Bowen*, 794 F.2d 703, 705-706 (D.C. Cir. 1986). "Between the third and fourth step, the SSA uses the entire record to make a determination of the claimant's residual functional capacity ('RFC'), which is 'the most [the claimant] can still do despite [the] limitations' caused by the impairment." *Espinosa*, 953 F. Supp. 2d at 31 (quoting 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1545(a)(5)(ii)). If, during the fourth step, the Plaintiff's RFC indicates that they are able to "return to their relevant past work", then the claimant is not disabled. *Id.* Similarly, if, during the fifth step, the claimant's RFC shows they can adapt to "other work that exists in the national economy," then they are not disabled. *Id*. "During these first four steps, the claimant bears the burden of proof.  At the fifth and final stage, the burden shifts to the Secretary to show that the individual, based upon his or her age, education, work

4

experience, and residual functional capacity, is capable of performing gainful work." *Brown*, 794 F.2d at 706.

"In a disability proceeding, the ALJ 'has the power and the duty to investigate fully all matters in issue, and to develop the comprehensive record required for a fair determination of disability.'" *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004) (citation omitted). Therefore, a reviewing court will not overturn the findings of the Commissioner if they are "supported by substantial evidence and [are] not tainted by an error of law." *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987); *see also* 42 U.S.C. § 405(g). Substantial evidence "is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). A reviewing court in a substantial-evidence case must engage in "careful scrutiny of the entire record." *Brown*, 794 F.2d at 705.

### III. ANALYSIS

Plaintiff argues that the ALJ erred by failing to give sufficient weight to Dr. Kamara's opinion that Plaintiff could only sit, stand, and walk for less than two hours per day, and could lift less than ten pounds. In this Circuit, "[a] treating physician's report is 'binding on the fact-finder unless contradicted by substantial evidence.'" *Butler*, 353 F.3d at 1003 (quoting *Williams v. Shalala*, 997 F.2d 1494, 1498 (D.C. Cir. 1993)); *see also* 20 C.F.R. § 404.1527(c) (an ALJ will give "controlling weight" to an opinion by a treating source, in determining disability insurance eligibility, that is not inconsistent with other substantial evidence in the record), 20 C.F.R. § 416.927 (same standards for determining SSI benefits). Substantial evidence is "more than a scintilla, but can be satisfied by something less than a preponderance." *Id.* Where an ALJ does not give a treating source's opinion controlling weight, the ALJ is to determine how much

weight to give the opinion based on factors including the length and frequency of examination, nature and extent of the treatment relationship, supportability of the opinion, consistency with the rest of the medical record, and any specialization of the practitioner. § 404.1527(c). An ALJ is required to "give good reasons" for the weight given to the treating source's opinion. *Id.*, § 416.927.

This court's role on review is not to decide whether a plaintiff is disabled, but rather only to "assess . . . whether the ALJ's finding that she is not is based on substantial evidence and a correct application of the law." *Butler*, 353 F.3d at 1003. In order for this court, then, to overturn the ALJ's denial of benefits, it would need to find legal error in the ALJ's decision not to treat Dr. Kamara's opinion as binding or controlling—in other words, the court would need to determine that there is an absence of substantial evidence contradicting it—or to find legal error in the amount of weight the ALJ gave her opinion.

Dr. Kamara's report of Plaintiff's limitations was contradicted by the following evidence: a state agency physician's Physical Residual Functional Capacity Assessment in September 2010 finding that Plaintiff could lift ten pounds frequently and up to 20 pounds occasionally, and stand for two to four hours per day and sit for six hours per day (AR 292); a George Washington University Hospital Neurosurgery department doctor's conclusion that Plaintiff should "avoid[] any heavy lifting or strenuous exercise" (AR 341); another state agency physician's affirmation of the original Residual Functional Capacity Assessment on March 29, 2011 (AR 349); another state agency physician's Disability Determination Explanation at Plaintiff's reconsideration phase indicating that Plaintiff could stand and walk four hours a day, sit for six hours, and lift ten pounds frequently and 20 pounds occasionally (AR 50, 48); and Plaintiff's own statements in his February 11, 2011 Adult Function Report that he could not lift more than 15-20 pounds (AR

6

240).  There was therefore substantial evidence before the ALJ that contradicted Dr. Kamara's August 2012 opinion.

Plaintiff argues that the ALJ should nonetheless have weighed Dr. Kamara's report more heavily, because his decision not to give it binding weight was based on a misunderstanding that Dr. Kamara had not examined Plaintiff since 2010.  As Judge Kay found, there is no evidence that Dr. Kamara examined Plaintiff since 2010.  Plaintiff's implied assertion[1] that the court should infer, despite the lack of evidence in the record, that Dr. Kamara had surely examined him between 2010 and 2012 cannot stand.  The court will not assume that Dr. Kamara examined Plaintiff in person between 2010 and 2012, where the record only shows that she was "following" his treatment.  (AR 352).

Plaintiff now claims that the ALJ discredited Dr. Kamara's report not because she had not actually examined him within two years, but because she did not submit contemporaneous notes.  There is no basis in the record for this assertion. The ALJ wrote: "Dr. Kamara last examined the claimant in June 2010, per the record, and therefore is not a credible source of information with regard to his current functioning."  (AR 16).  His finding is supported in the record.  The contradiction between Dr. Kamara's report and the other medical evidence and opinions in the record is, by itself a sufficient basis for discrediting her report or giving it little weight.

Plaintiff also takes issue with the ALJ's finding that because Plaintiff presented no evidence of a worsening condition since the February 2011 Adult Function Report, at which time

---

[1]  Plaintiff argues that a finding that "a primary care physician who wrote she was following a patient for three years for back pain did not actually examine him during that period . . . would be . . . simply too strained to uphold."  (Objection at 6).

he stated he could lift up to 15 or 20 pounds, Plaintiff's assertion at the administrative hearing that he could not lift more than ten pounds was not credible. Plaintiff argues that the record did contain evidence of a worsening condition: his report at a March 2011 doctor's visit of pain levels at 9 out of 10. But the ALJ noted that the doctor who saw Plaintiff did not document any findings sufficient to support a limitation of lifting less than ten pounds. It was reasonable for the ALJ to conclude that Plaintiff's condition at the time of the hearing had not worsened since the February Adult Function Report, and to discredit Plaintiff's descriptions of his abilities, because his statements at the hearing contradicted his statements in the Adult Function Report. Additionally, the ALJ noted that even if Plaintiff could lift no more than ten pounds, a finding of no disability would be warranted based on the vocational expert's testimony. (*Id.*)

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Reversal is DENIED. A corresponding order will issue separately.

Date:  September 30, 2016

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge